## State Workmen's Insurance Fund, Appellant, *v.* Pittsburgh Terminal Coal Corporation.

Argued October 5, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Guy B. Hoge,* Special Deputy Attorney General, with him *Guy K. Bard,* Attorney General, and *John T. J. Brennan,* for appellant.

*Sidney J. Watts,* of *Baker & Watts,* for appellee, was not heard.

OPINION BY MR. JUSTICE LINN, December 5, 1938:

On the petition of Pittsburgh Terminal Coal Corporation, designated as defendant, the learned court below struck off the record of a lien against petitioner in favor of the State Workmen's Insurance Fund, named as the plaintiff. This appeal is from that order. The lien had been entered by the prothonotary of the common pleas on an order or certificate addressed to him by counsel for the State Workmen's Insurance Fund, stating that he was authorized and directed by section 18 of the Act[1] of June 2, 1915, P. L. 762, 77 PS section 343, as amended, to send "a certified copy of the statement made against the said company on the 8th day of March, 1934 and approved by the State Workmen's Insurance Board on the 23d day of April, 1934, for excess compensation insurance premium showing a balance due of Forty-seven Hundred Eighty-seven and 87/100 Dollars for the period, April 1, 1933 to Feb. 1, 1934, ended the 1st day of

---

[1] Three other acts were referred to: section 12 of the Act of March 30, 1811, P. L. 145, 5 Sm. L. 228; section 31 of the Act of June 1, 1889, P. L. 420; sections 1 and 2 of the Act of June 15, 1911, P. L. 955.

February, 1934 which is to be entered of record in your office in favor of the State Workmen's Insurance Fund and against the above named defendant as provided by law." The paper contained a calculation showing how the amount of the indebtedness was obtained and an affidavit by the assistant manager of the State Workmen's Insurance Fund that the statement was true and that the sum specified was owing with "interest at 12% per annum, commencing 30 days after service of copy of said account by registered mail. . . ."

In its petition, the Pittsburgh Terminal Coal Corporation averred that it was a corporation engaged in operating coal mines in this Commonwealth; that the State Workmen's Insurance Fund "is an agency set up by the provisions of the Act of Assembly, approved June 2, 1915, P. L. 762, section 3, 77 PS section 221, . . . [engaged in] the business of writing workmen's compensation insurance for employers hiring labor in Pennsylvania"; that petitioner was insured in such fund for a period terminating February 28, 1934; that no authority to file the lien appeared; that while section 18 of the Act, 77 PS section 343, provided that unpaid premiums should be a lien as state taxes are a lien, the Act conferred no authority to transmit the certificate in question to the prothonotary; that the right of the Fund, if any, to prosecute a lien pursuant to section 18, "required precedent resort by said Fund to the procedure outlined in Section 1001 of the Fiscal Code of 1929 (72 PS section 1001); namely, the making of a settlement by the Department of Revenue, subject to audit and approval by the Auditor General, and subject also to petitioner's right to be notified thereof and to petition for a resettlement (77 PS sections 1101 and 1102)" and that such procedure had not been followed.

A rule to show cause was granted. The State Workmen's Insurance Fund answered and asserted the right to do what was done but gave no reference to any statu-

tory authority supporting the right asserted. After argument on petition and answer the learned court below struck off the lien on the ground that no authority to file it had been shown.

By various acts approved June 2, 1915, P. L. 736, et seq., 77 PS section 1 et seq., provision was made for workmen's compensation in this Commonwealth; for the administration of the Act by a bureau[2] of Workmen's Compensation of the Department of Labor and Industry and for a Workmen's Compensation Board to have charge of such bureau, etc.; the law provided, P. L. 762, for the creation and administration of a State Fund for the insurance of compensation and, P. L. 769, for the regulation of policies of insurance against liability. These Acts have been amended and supplemented from time to time. Section 3 of the Act providing for the creation and administration of the Fund (P. L. 762) enacts that "Certain sums to be paid by employers, as hereinafter provided, are hereby constituted a Fund, to be known as The State Workmen's Insurance Fund, for the purpose of insuring such employers against liability under article three of the Workmen's Compensation Act of 1915 (P. L. 736). . . . Such Fund shall be administered by the Board, without liability on the part of the State, except as [not now material]." Section 4 provides that "The State Treasurer shall be the custodian of the Fund; and all disbursements therefrom shall be paid by him, upon vouchers authorized by the Board.[3] . . ." A number of sections deal with premium rates to be paid by subscribers. Section 12 authorizes the Board to "invest any of the surplus or reserve belonging to the Fund . . ." and provides that the State Treasurer shall be custodian of the investments with authority to collect principal and interest and pay the same into the Fund. Subsequent sections authorize the Board

---

[2] See Administrative Code, 1929, P. L. 177, 189.

[3] See also section 24, and the Act of April 27, 1927, P. L. 416.

to make contracts, etc. Section 16 provides: "Any employer who shall have accepted the provisions of article three of the Workmen's Compensation Act of 1915, and who shall desire to become a subscriber to the said Fund, for the purpose of insuring therein his liability to those of his employees, or any class thereof, who have accepted the said provisions, shall make a written application for such insurance to the said Board; . . ." Section 17 provides that all premiums shall be payable to the State Treasurer.

Section 18, after providing for the ascertainment of the amount due to the Fund by a subscriber, states: "and, thereupon, within thirty days, the said Board shall state the account of such subscriber for such calendar year, based on the facts thus proven, and shall render a copy of such statement to the subscriber; and, if the amount of the premium theretofore paid by such subscriber shall exceed the amount due according to such stated account, then the excess shall be forthwith refunded to the subscriber by payment out of the Fund in the manner hereinafter provided; and, if the amount shown by said statement exceed the amount of the premium theretofore paid by such subscriber, the excess shall be forthwith due and payable by the subscriber into the Fund, and until paid shall be a lien, as State taxes are a lien, upon the real and personal property of the subscriber; and, if unpaid, shall be collectible as State taxes are now collectible, with interest at the rate of twelve per centum per annum, commencing thirty days after service of the copy of said account, which service shall be by registered mail." (P. L. 766.)

Section 21 provides that when "claim is made against the Fund, the Fund shall be entitled to every defense against such claim that would have been open to the employer," including the right of subrogation. It also provides that "The Fund may, in the name of the State Workmen's Insurance Fund, sue in any county of this Commonwealth, or be sued, in the court of common pleas

of Dauphin County, to enforce any right given against or to any subscriber or other person under this act or the Workmen's Compensation Act of 1915; and the proceedings provided in article four of the Workmen's Compensation Act of 1915 may be instituted by or against the Fund, in the said name, to enforce, before the Board of Workmen's Compensation or any Referee thereof, the rights given to or against the said Fund by the Workmen's Compensation Act of 1915."

It is apparent that the Act provides for the voluntary association by subscribers to the Fund which, with the assistance of the State[4] shall be administered by the State Workmen's Insurance Board and the Bureau of Workmen's Compensation of the Department of Labor and Industry, the Board being composed of the Commissioner[5] of Labor and Industry, the Insurance Commissioner and the State Treasurer (P. L. 762). The liability of the state is limited as specified in the act, e. g., section 3. The purpose of the association is to enable the subscribers to enjoy the benefits of this system of workmen's compensation insurance in preference to alternatives permitted by the Act. By subscribing, pursuant to the Act, the subscribers become members of the association entitled "The State Workmen's Insurance Fund," administered by officers and employees[6] of the

---

[4] See, for example, sections 8, 26, 27, 28, P. L. 763, 769, and Act of May 17, 1921, P. L. 846.

[5] See section 443, Administrative Code, 1929, P. L. 177, 216.

[6] The supplement of April 20, 1921, P. L. 195, 77 PS section 381, provides: "Section 1. Be it enacted, etc., That the officers and employees of the State Workmen's Insurance Board created by the act to which this is a supplement shall be deemed and held to be, for all purposes whatsoever, officers and employees of the Commonwealth of Pennsylvania, and shall be entitled to and have and exercise all the rights, powers, and privileges, and be subject to all the duties, restrictions, and penalties, of other officers and employees of the Commonwealth."

State as an agency of the State. In becoming a member each subscriber of course accepts the terms and conditions imposed by the statute and agrees to be bound by them; the State Workmen's Insurance Fund is likewise bound.[7] One of the terms of the contract set out in section 18, is that "if the amount shown by said statement exceed the amount of the premium theretofore paid by such subscriber, the excess shall be forthwith due and payable by the subscriber into the Fund, and until paid shall be a lien, as State Taxes are a lien, upon the real and personal property of the subscriber; and, if unpaid, shall be collectible as State taxes are now collectible . . ." etc. Accordingly, if defendant is indebted to the Fund for unpaid premiums, the amount of the indebtedness is now a lien upon its real and personal property. There is no doubt of the power of the state to impose such a lien: *Harper v. Consolidated Rubber Co.,* 284 Pa. 444, 131 A. 356; or of the right to provide the method of collection by reference to existing procedure provided by law: *James Smith Woolen Co. v. Browne,* 206 Pa. 543, 56 A. 43. In legal effect the lien entered by the Fund, and stricken off by the learned court below, was a judgment, but the difficulty with it is that counsel who presented the appeal on behalf of appellant has been unable to point to any statutory authority supporting the act of the Fund's counsel in directing the prothonotary to enter it. If a cautionary lien or if a judgment is desired in Allegheny County, the method provided by law must be pursued.

Order affirmed.

---

[7] The cases are numerous; taken at random, see, for example, *Calabria v. State Workmen's Insurance Fund,* 132 Pa. Superior Ct. 118, rev. 333 Pa. 40; *Casper v. Same,* 132 Pa. Superior Ct. 96; *Beals v. Same,* 131 Pa. Superior Ct. 418.